UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTUAN VALENTINO LITTLE,

             Plaintiff,

v.                                Case No. 18-cv-130-pp

T. MOON and
SGT. TRITT,

             Defendants.

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

The plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that defendants T. Moon and Sgt. Tritt[1] violated his civil rights by destroying fourteen photographs of him and his mother. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepayment of the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepayment of the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows

---

[1] In the caption of the plaintiff's complaint, he lists the defendants as "T. Moon; Jane Doe," but in the section of his complaint identifying the parties, he clarifies that the real name of Jane Doe is Sgt. Tritt. Dkt. No. 1 at 2. The plaintiff also refers to "Sgt. Tritt" throughout the allegations of his complaint. The court has updated the caption of the plaintiff's complaint to reflect Jane Doe's real name.

a court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 29, 2018, the court ordered the plaintiff to pay an initial partial filing fee of $3.31. Dkt. No. 4. On March 21, 2018, the court received that partial filing fee from the plaintiff. Therefore, the court will grant the plaintiff's motion for leave to proceed without prepayment of the filing fee, and allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order

## II. Screening the Plaintiff's Complaint

### A. *Federal Screening Standard*

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous, malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the defendant was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  *The Plaintiff's Allegations*

The plaintiff has been incarcerated since August 2009, shortly after he graduated from high school. Dkt. No. 1 at 2. In November 2009, he learned from his mother during a phone call that she had cancer. Id. He received a number of photographs of him and his mother in February 2012. Id. In December 2013, he learned that the doctors gave his mother only six months to live; she died from complications of cancer in March 2014. Id. at 3.

The plaintiff explains that in December 2015, he was confined in the restricted housing unit at New Lisbon Correctional Institution, and was being processed for a transfer to Waupun Correctional Institution, where he currently is housed. Id. Under the Division of Adult Institutions policy, correctional

3

officers inventoried all of his property before the transfer. Id. Correctional Officer Waterman (who is not a defendant) listed forty-eight photographs on the plaintiff's document form (DOC 236). Id. According to the plaintiff, Waterman placed the photographs in a box, along with the plaintiff's other property, and sealed the box for shipping to Waupun. Id.

The plaintiff arrived at Waupun on December 16, 2015. Id. The plaintiff states that Waupun property officers inventoried the plaintiff's possessions and indicated that the plaintiff had sixty-four photographs. Id. The plaintiff alleges that Department of Corrections policy limits inmates to fifty photographs; he alleges that, for this reason, the officers allegedly confiscated fourteen of the plaintiff's photographs. Id.

The next day, the officers called the plaintiff to the property room to receive his property. Id. They allegedly told him that he had fourteen more photographs than policy allowed. Id. The plaintiff asserts that they gave him three options: 1) send the extra photographs home; 2) destroy the extra photographs; or 3) file a complaint. Id. The plaintiff states that, because he thought he had only forty-eight photographs, he decided to file a complaint. Id. He indicates that the property officer recorded this choice on a form DOC-237A, "signed 12-17-15." Id. at 4.

The plaintiff identifies several policies relevant to personal property, contraband, and the seizure and disposition of contraband. Id. at 4. He also identifies policies relevant to the administrative remedies available at the institution. Id. The plaintiff explains that these policies required the institution

to retain his property until the final disposition of his complaint. Id. The plaintiff further explains that a "final disposition" on a complaint occurs only after the office of the secretary rules on the inmate's appeal of the decision on a complaint. Id.

The plaintiff states that defendant complaint examiner Moon recommended that the complaint be dismissed. Id. She instructed the plaintiff to "notify the property department after his appeal or as soon as possible if not appealing." Id. The plaintiff states that warden Brian Foster (who is not a defendant) reviewed Moon's recommendation and dismissed his complaint. Id. The plaintiff got this decision around February 1, 2016, and asserts that he then began the appeal process and sent notice to property staff of his decision to appeal. Id. He also applied for a legal loan. Id. at 4-5.

According to the plaintiff, during the review of his appeal, he received a decision on another appeal he had filed. Id. at 5. That appeal was about a television set that had been confiscated at the same time his photographs had been confiscated. Id. That decision "made" the plaintiff write a request to the property room, asking that "his television be sent to a repair shop to be fixed, as the complaint's appeal was done." Id.

The plaintiff asserts that "the information that came back" to him "informed him that his television had been destroyed 02-17-16 by T. Moon and SGT. Tritt." Id. This information prompted the plaintiff to write another request to the property room "for clarification, asking if his other property that had

5

been confiscated was destroyed also." Id. The "property room" responded that "all of [the plaintiff's] confiscated property had been destroyed 02-17-16." Id.

The plaintiff explains that under DOC policy, "inmate shall be given written notice within 10 days of the disposal of any of their personal property." Id. Thus, he argues, he should have received written notice of the intent to destroy his property ten days before it was destroyed. The plaintiff asserts, however, that he did not get any notice "to inform him that the defendants would be doing this." Id.

The plaintiff also says that his appeal about the photographs did not "become final until 08-24-16 when the decision by CCE that the photographs were unauthorized property was distributed." Id. The plaintiff argues that under DOC policy, he should have had up to thirty days after that date to decide whether to destroy the photographs, mail them home at his expense, or "send them out on a visit." Id.

The plaintiff explains that he is devastated from losing the photographs of his mother because she was the closest person to him, and he will never be able to take pictures with her again or see her again. Id. at 5-6. The photos were his most valuable property, and he is suffering mentally and emotionally because of their loss. Id. at 6.

C. *The Court's Analysis*

The court can only imagine the plaintiff's pain over losing photographs of his mother. The court cannot, however, allow the plaintiff to proceed with this

6

case, because his complaint fails to state a claim for which a federal court can grant relief.

At the screening stage, the court must "accept as true all facts alleged in the complaint and draw all reasonable inferences from them in the plaintiff's favor." Kimmons v. Waupun Property Staff, 1 Fed. App'x 496, 498 (7th Cir. 2001). The plaintiff does not directly state that it was Moon and Tritt who destroyed his photographs; he uses the passive voice in discussing the destruction. For the purposes of screening the complaint, the court will assume that the plaintiff believes that Moon and Tritt were the ones who destroyed all of his confiscated property, including the photographs. The plaintiff asserts that the defendants violated various DOC and DAI policies when they destroyed the property. At the screening stage, the court will assume that this is true.

The plaintiff sued the defendants under 42 U.S.C. §1983. Dkt. No. 1 at 1. Section 1983 allows a plaintiff to sue a state defendant for violating the plaintiff's civil rights under the federal Constitution or federal laws. ". . . 42 U.S.C. §1983 addresses only violations of federal law and federally protected liberty interests, not violations of state procedures." Clapper v. Wis. Dept. of Corrections, 946 F. Supp. 672, 679 (E.D. Wis. 1996). The plaintiff does not identify any federal law that the defendants violated. He does allege that the defendants destroyed his property without due process in violation of the Fourteenth and Eighth Amendments to the United States Constitution.

1. Fourteenth Amendment Due Process Argument

The plaintiff alleges that the defendants violated various DOC and DIA policies in destroying his property. "Constitutional violations may stem from the deprivation of a protected liberty interest arising from state statutes or administrative regulations as well as federal law." Clapper, 946 F. Supp. 672, 678-79 (citing Williams v. Lane, 851 F.2d 867 (7th Cir. 1988)). Here the plaintiff alleges that the defendants deprived him of his property without due process in violation of the Fourteenth Amendment, when they did not wait until his appeal was final before destroying the property, and did not give him notice in advance that they were going to destroy it.

The plaintiff does not argue that the DOC and DAI policies were unconstitutional, or that they did not provide due process to inmates before destruction of property. Rather, he argues that these two defendants, Moon and Tritt, did not follow the policies. He implies that if they had followed the policies, he would have received the process that he was due (and would have had the chance to save the photos).

It is possible that the defendants were negligent in destroying the plaintiff's property. Perhaps they did not know of the notice policy, or did not know that he had appealed the disposition of his complaint, or did not know that the appeal had not become final. If they were negligent in destroying the property, the plaintiff cannot state a claim; "negligent bureaucratic errors do not violate the Due Process Clause." Streckenbach v. Vandensen, 868 F.3d 594, 597 (7th Cir. 2017) (citing Daniels v. Williams, 474 U.S. 327, 336 (1986)).

The plaintiff asserts that the defendants "intentionally" destroyed his most valuable property, "without notice or regard for well established Department of Corrections policy and procedural due process requirements . . . ." Dkt. No. 1 at 7. But the United States Supreme Court has held that even intentional deprivations of property do not violate the Fourteenth Amendment's due process requirements when they are "effected through random and unauthorized conduct of a state employee," "rather than by an established state procedure," as long as "a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 532-33 (1984) (citing Parratt v. Taylor, 451 U.S. 527, 141 (1981) and Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)).

The Seventh Circuit has held that the postdeprivation remedy for the destruction of an inmate's property is "litigation, under state law, to recover the property's value." Streckenbach, 868 F.3d at 597. The Seventh Circuit has held that "Wisconsin's post-deprivation procedures are adequate." Kimmons, 1 Fed. App'x at 489-99 (citing Hamlin v. Vaudenberg, 95 F.3d 580, 585 (7th Cir. 1996) (discussing the grievance procedures under Wis. Admin. Code §DOC 303.10(4) and state law tort claims); also citing Wis. Stat. §§893.35, 893.51, and 893.52). The Seventh Circuit has noted that "Wisconsin allows many kinds of tort claims against the state," and has listed some of them. Streckenbach, 868 F.3d at 597.

The plaintiff asserts that the defendants destroyed his property, not by following an established procedure, but by acting in contradiction to

established procedures. Under the law, that action does not violate due process, because the plaintiff had a procedurally adequate post-deprivation remedy—suing in state court. The court realizes that the plaintiff cannot put a money value on the photos of the mother he lost; they were priceless. He likely cannot think of any amount of money that would be "adequate" to compensate him for the loss of the images of his mother. But under federal law, he cannot state a due process claim.

2. Eighth Amendment Cruel and Unusual Punishment Claim

The plaintiff alleges that in destroying his photographs of his mother, the defendants have caused him "continuous pain from the loss and mental and emotional anguish," and that this violated the Eighth Amendment's prohibition against cruel and unusual punishment. For relief, he has requested nominal damages of $15,000 from each defendant, and punitive damages of $125,000 from each defendant. Dkt. No. 1 at 8.

The Seventh Circuit has held that, while 42 U.S.C. §1997e(e) precludes an inmate from recovering *compensatory* damages for mental or emotional injury if he has not demonstrated physical injury, an inmate may seek nominal and/or punitive damages for such an injury. Calhoun v. DeTella, 319 F.3d 936, 940-943 (7th Cir. 2003) (citations omitted). The plaintiff has not asked for compensatory damages. He says he asks for "nominal damages;" the amount he seeks raises a question of whether the damages he seeks are truly "nominal." See, *e.g.*, Seventh Circuit Federal Jury Instructions, Civil, 7.23 (instructing jury that if plaintiff does not prove compensatory damages, it must

award the plaintiff one dollar); Shigemura v. Duft, 211 Fed. App'x 499, 501 (7th Cir. 2006) (plaintiff who prevailed on due process claim received nominal damages of $1.00). Regardless, the Seventh Circuit allows a plaintiff to bring a lawsuit alleging only mental and emotional injury under these circumstances.

The court must consider, though, whether the plaintiff has stated a claim for a violation of the Eighth Amendment. The Eighth Amendment imposes on prison officials a duty to "provide humane conditions of confinement," which means that they must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). A court considering this question has to look at the alleged deprivation "both objectively and subjectively." Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001) (quoting Farmer at 834). The "objective" component requires the court to decide whether the deprivation was sufficiently serious to warrant constitutional protection. The "subjective" component requires the court to look at whether the "mental state of the prison official" was "'one of deliberate indifference to inmate health or safety.'" Id.

"The Eighth Amendment does not outlaw cruel and unusual 'conditions' it outlaws cruel and unusual 'punishments.'" Farmer, 511 U.S. at 837. "The infliction of punishment is a deliberate act intended to chastise or deter . . . . [I]f [a] guard accidentally stepped on [a] prisoner's toe and broke it, this would not be punishment in anything remotely like the accepted meaning of the word

11

. . . ." Wilson v. Seiter, 510 U.S. 294, 300 (1991) (quoting from unidentified case by Seventh Circuit Judge Richard Posner). So—"a prison official cannot be found liable under the Eighth Amendment . . . unless the prison official knows of and disregards and excessive risk to [the inmate]; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The court cannot tell from this complaint whether the plaintiff has stated an Eighth Amendment claim. As the court noted above, the plaintiff does not specifically state that Moon and/or Tritt were the ones who destroyed the photos. He does not state whether Moon and Tritt knew that the photos were pictures of the plaintiff's mother, or whether they knew that she had passed away. The plaintiff does not state whether Moon or Tritt had any reason to know that losing the photos would cause the plaintiff significant emotional pain and suffering. He does not explain why he believes that Moon or Tritt deliberately destroyed the photos (as opposed to believing that they were negligent in doing so).

The court will give the plaintiff one opportunity to amend his complaint, to address the issues the court raises with regard to his Eighth Amendment claim. The court will send the plaintiff a blank form complaint. He must write the word "Amended" next to the word "Complaint" in the heading. He must put the case number for this case—18-cv-130—in the field for the case number. He must name only those defendants whom he knows destroyed the photos. He

must state in the amended complaint all the information that he has about who destroyed the photos, what those people knew, and what information he has about why they destroyed the photos. He must state *only* his Eighth Amendment claim in the amended complaint; the court is dismissing his Fourteenth Amendment claim for the reasons discussed above. The complaint must contain *all* the information the plaintiff knows about the Eighth Amendment claim, because the amended complaint will take the place of the original complaint. The court will give the plaintiff a deadline for filing the amended complaint. If the court does not receive the amended complaint by that deadline, the court will dismiss the plaintiff's case for failure to state a claim.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff's Fourteenth Amendment due process claim is **DISMISSED** with prejudice, because it fails to state a claim upon which a court can grant relief.

The court **ORDERS** that if the plaintiff wants to proceed on his Eighth Amendment claim, he must file an amended complaint that complies with this order in time for the court to receive it by the end of the day on **Friday, June 15, 2018**. If the court does not receive the amended complaint by the end of the day on Friday, June 15, 2018, the court will dismiss the case on the next business day without further notice or hearing. If the court receives the

13

complaint by the deadline, it will screen the plaintiff's Eighth Amendment claim.

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $346.69 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state, or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

Dated in Milwaukee, Wisconsin, this 14th day of May, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Court Judge**