UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

ANTUAN VALENTINO LITTLE,

                Plaintiff,

v.                                                 Case No. 18-cv-130-pp

T. MOON and SGT. TRITT,

                Defendants.

─────────────────────────────────────────────

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 8)
AND DISMISSING CASE**

─────────────────────────────────────────────

The plaintiff filed a complaint under 42 U.S.C. §1983, alleging that some defendants had violated his civil rights. Dkt. No. 1. The court screened the complaint, and decided that the plaintiff had not stated a due process claim under the Fourteenth Amendment. Dkt. No. 7 at 8-10. The court explained in its screening order that based on the plaintiff's allegations, the court could not determine whether he had stated a deliberate indifference claim under the Eighth Amendment. Id. at 12. The court gave the plaintiff an opportunity to file an amended complaint, clarifying his proposed Eighth Amendment claim. The court received that amended complaint on May 30, 2018. Dkt. No. 8. The court finds that the amended complaint fails to state a claim under the Eighth Amendment, and will dismiss the case.

I.     **Federal Screening Standard**

As the court explained in its original screening order, it must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious,"

that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from relief. 28 U.S.C. §1915A(b). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## II.     The Plaintiff's Allegations

The allegations in the amended complaint are largely the same as those in the plaintiff's original complaint. He again explains the Department of Corrections (DOC) policies on the retention and destruction of inmate property. The court already decided in its May 14, 2018 screening order that the plaintiff had failed to state a due process claim based on his allegations that the defendants did not comply with those DOC policies. Dkt. No. 7 at 8-10. The court will not repeat that analysis here.

As for his proposed Eighth Amendment claim, the plaintiff explains that has been incarcerated since August 2009. Dkt. No. 8 at 3. In December 2009, he found out during a phone conversation with his mother that she had cancer. Id. In December 2013, the plaintiff learned from his mother's doctors

2

that she likely would pass away within six months, because of complications from the cancer. Id. The plaintiff's mother died some three months later. Id. at 4. Less than a year after her death, the Department of Corrections transferred him to a new institution. Id. at 4. As part of his transfer, corrections officers inventoried his personal property. Id. Correctional Officer Waterman (who is not a defendant) noted that the plaintiff had forty-eight photographs. Id. The plaintiff explains that these were pictures of him with his mother. Id. (For example, the plaintiff graduated from high school two months before he went to prison; his mother was at the graduation ceremony, and they took pictures together. Id. at 3.)

After inventorying the plaintiff's property, Waterman sealed the photographs (along with other property) in a box and shipped them to the plaintiff's new institution. Id. at 4. Upon receipt, property staff at his new institution inventoried the plaintiff's property, but they counted sixty-four photographs, rather than forty-eight. Id.

DOC policy limits inmates to fifty photographs, so the property staff confiscated fourteen photographs. Id. at 6. Staff advised the plaintiff to send the extra photographs home, destroy the extra photographs or file an inmate complaint. Id. The plaintiff filed an inmate complaint. Id. In his complaint, the plaintiff informed defendant T. Moon (the inmate complaint examiner) that he had found photographs in his pile of fifty allowable photographs that did not belong to him. Id. The plaintiff asked if he could exchange those photographs for the ones the property officers had confiscated. Id.

According to the plaintiff, Moon recommended that his complaint be dismissed. Id. at 7. She instructed him to "notify the property department of his chosen disposal method after his appeal or as soon as possible if not appealing." Id. The plaintiff started the appeal process. Id. During that process, he learned that staff had destroyed some property that was the subject of a separate appeal. Id. This prompted the plaintiff to ask the property staff about his photographs. Id. The plaintiff learned that staff had destroyed his photographs about two weeks after he received Moon's decision. Id. Based on the timing of the destruction, and the fact he alleges that defendant Tritt had destroyed his other property, the plaintiff believes that Moon and defendant Tritt destroyed his photographs. Id.

The plaintiff alleges that he told Moon that the photographs were of family and that Moon knew of the DOC policies requiring the staff to give him notice before destroying his property. Id. at 9-10. He also alleges that he is devastated, because these photographs were some of the last ones he took with his mother, and he will never see her again. Id. at 9.

## III. The Court's Analysis

As the court emphasized in its original screening order, it can imagine that the plaintiff is deeply saddened by the destruction of these fourteen photographs. They were special to him; not having them must be very painful. But not every injury that a person suffers gives rise to a claim under the Constitution.

The Eighth Amendment imposes on prison officials a duty to "provide humane conditions of confinement," which means that they must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To state a constitutional claim of cruel and unusual punishment under the Eighth Amendment, a plaintiff must allege that the deprivation he suffered was serious enough to warrant constitutional protection, and he must allege that the defendant's state of mind was "one of deliberate indifference to inmate health or safety." Sanville v. McCaughtry, 266 F.3d 724, 733 (7th Cir. 2001).

Although the plaintiff alleges very upsetting facts, those facts do not satisfy either prong of the cruel-and-unusual standard. As for the seriousness of the deprivation, the amended complaint alleges that the defendants destroyed (or directed the destruction of) fourteen of his forty-eight photographs. While the plaintiff is very sad to be without these photographs, their destruction does not affect his health or safety, and so does not sustain protections under the Eighth Amendment. See Lilly v. Biscoe, 273 F.3d 392 (2001) (holding that plaintiff "cannot state a claim under the eighth amendment for deliberate indifference to the security of his property").

As for the state of mind of defendants Moon and Tritt, the plaintiff alleges only that he informed Moon that the pictures were of "family." He has not alleged that Moon or Tritt knew that the photographs were of his deceased

5

mother, or that they knew that destroying the photographs would inflict deep pain on the plaintiff. In fact, he alleges that institution staff gave him the option of sending the extra photos home, but he chose to file a complaint instead. Because the plaintiff does not allege that the defendants knew of the significance of these photographs, or that they knew the impact that destroying these photographs would have on the plaintiff, he has not shown that Moon and Tritt deliberately tried to harm or punish him, or were deliberately indifferent to his needs. See Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) (explaining that a "defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference").

In the amended complaint, the plaintiff asks that before the court dismiss his case, or require him to file another amendment, it "allow the discovery phase to complete," so that he can collect more facts and clarify any discrepancies. Dkt. No. 8 at 9. He says that once discovery is complete, he will be able to prove that Moon and Tritt "knew or should have known the photographs were of family," and that they intentionally destroyed the photographs. Id. at 9-10. The court will not grant this request. Even if the court assumes that Moon and Tritt knew that the photographs were "of family," and even if they destroyed them on purpose, that still would not rise to the level of cruel and unusual punishment. Destroying his photographs—even precious photographs of someone the plaintiff loved very much, and lost in a tragic way—does not deny the plaintiff humane conditions of confinement.

Although it would be cruel for institution staff deliberately to destroy the only pictures the plaintiff had of his beloved mother (although it appears he still has thirty-four other photos), it would not constitute cruel and unusual punishment under the Constitution.

**IV.    Conclusion**

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

In some cases, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties closely to review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 25th day of July, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**